**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NUMBER: 0:23-mj-35-MCRI** |
| **v.** | **AFFIDAVIT IN SUPPORT** |
| | **OF REQUEST FOR** |
| **HASSANBUNHUSSEIN ABOLORE LAWAL** | **EXTRADITION** |

I, A. Lothrop Morris, being duly sworn, depose and state:

1.    I am a citizen of the United States and a resident of the State of South Carolina.

2.    I graduated from University of Miami School of Law in 1996. From August of 1999 to the present, I have been employed by the United States Department of Justice as an Assistant United States Attorney for the Southern District of Florida and the District of South Carolina. My duties are to prosecute persons charged with criminal violations of the laws of the United States. During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

3.    As an Assistant U.S. Attorney for the District of South Carolina, I am responsible for the preparation and prosecution of criminal cases. Based upon my training and experience, I am an expert in the criminal laws and procedures of the United States.

4.    In the course of my duties, I have become familiar with the charges and evidence in the case of HASSANBUNHUSSEIN ABOLORE LAWAL, also known as also known as "Bella Jannet," "BellaJannet28," "BellaJannet30," "Alice Conner," "Aliceconnor566," "Hassan Lawal," and "Lawal Hassan" (LAWAL), and his codefendants, entitled <u>United States of America v. HASSANBUNHUSSEIN ABOLORE LAWAL</u>, Case Number 0:23-mj-00035-MCRI (also referred to as 0:23-mj-00035-MCRI). This prosecution arose from an

1

investigation by the Federal Bureau of Investigation (FBI), which revealed that on July 27 and 28, 2022, LAWAL solicited child pornography from a victim in the District of South Carolina herein referred to as Minor Victim.[1] At the time, Minor Victim was 17 years old. After LAWAL obtained pornographic images of Minor Victim from Minor Victim, he threatened to release the images publicly unless Minor Victim paid him money. Minor Victim paid LAWAL $25,[2] but LAWAL demanded more and continued threatening to release the images, even after Minor Victim explained he had a gun and would commit suicide. Even after Minor Victim committed suicide, LAWAL distributed pornographic images of Minor Victim to his surviving family members, and attempted to defraud and extort them as well.

## PROCEDURAL HISTORY OF THE CASE

5.     On August 11, 2023, a criminal complaint was filed in the United States District Court for the District of South Carolina, charging LAWAL with violating the criminal laws of the United States. On August 11, 2023, a United States Magistrate Judge signed a warrant of arrest for LAWAL. That warrant is outstanding and remains valid and executable.

The Charging Process

6.     Under the federal laws of the United States, a criminal prosecution may be commenced by the filing of a criminal complaint in a United States District Court. A criminal complaint is a written statement of essential facts constituting an offense charged and is made under oath before a United States Magistrate Judge. A criminal complaint must establish that probable

---

[1] The identities of the victims have been withheld to protect their privacy and/or that of their surviving family members. Consistent with U.S. law, LAWAL will be provided information necessary for his defense prior to trial.

[2] All references to currency are in U.S. dollars unless otherwise noted.

cause exists to believe that an offense has been committed and that the defendant named in the complaint committed it. If satisfied that the complaint sets forth a sufficient factual basis to establish probable cause, the United States Magistrate Judge orders the issuance of a warrant for the arrest for the defendant named in the complaint.

7. On August 11, 2023, Task Force Officer Robert M. Hamilton of the Federal Bureau of Investigation (FBI) filed a criminal complaint before United States Magistrate Judge Shiva V. Hodges of the District of South Carolina, formally charging LAWAL with criminal offenses against the laws of the United States. It is the practice of the United States District Court for the District of South Carolina to retain the original complaint and file it with the records of the court. Therefore, I have obtained a copy of the complaint from the clerk of the court and attached it to this statement as **Exhibit A.**

The Warrant of Arrest

8. On August 11, 2023, based on the criminal complaint, United States Magistrate Judge Shiva V. Hodges signed a warrant of arrest for LAWAL. It is the practice of the United States District Court of the District of South Carolina to retain the original arrest warrant and file it with the records of the court. Therefore, I have obtained a copy of the arrest warrant from the clerk of the court and attached it to this affidavit as **Exhibit B**. The warrant remains valid and executable to apprehend LAWAL to stand trial for the crimes with which he is charged in the complaint.

## THE CHARGES AND PERTINENT UNITED STATES LAW

9. The complaint charges in nine counts that LAWAL, and others, committed the following offenses:

Count 1          Sexual exploitation of a child and production of child pornography resulting

                 in death, and conspiracy and attempt, in violation of Title 18, United States

                 Code (U.S.C.), Sections (§§) 2251(a) and 2251(e).  The maximum penalty

                 for sexual exploitation of a child resulting in death is life in prison or death.

Count 2          Distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2).

                 The maximum penalty for this offense is 20 years in prison.

Count 3          Coercion and enticement and attempted coercion and enticement, in

                 violation of 18 U.S.C. § 2422(b).  The maximum penalty for this offense is

                 life in prison.

Count 4          Cyberstalking resulting in death, in violation of 18 U.S.C. § 2261A.  The

                 maximum penalty for this offense is life.

Count 5          Interstate threat with intent to extort, in violation of 18 U.S.C. § 875(d).  The

                 maximum penalty for this offense is two years in prison.

Count 6          Wire fraud, in violation of 18 U.S.C. § 1343.  The maximum penalty for

                 this offense is 20 years in prison.

Count 7          Wire fraud conspiracy, in violation of 18 U.S.C. § 1349.  The maximum

                 penalty for this offense is 20 years in prison.

Count 8          Criminal conspiracy, in violation of 18 U.S.C. § 371.  The maximum

                 penalty for this offense is five years in prison.

Count 9          Aiding and abetting, in violation of 18 U.S.C. § 2, which provides that a

                 person who aids and abets the commission of any of the foregoing crimes

                 is as guilty as the person who actually performs the criminal act.  The

                 maximum penalty for this offense is the same as for the underlying crime.

10. The United States requests the extradition of LAWAL for all of these offenses. Each count charges a separate offense. Each offense is punishable under a statute that (1) was the duly enacted law of the United States at the time the offense was committed, (2) was the duly enacted law of the United States at the time the complaint was filed, and (3) is currently in effect. Each offense is punishable under United States law by more than one year of imprisonment. Copies of the pertinent sections of these statutes are included in the relevant legal provisions attached as **Exhibit C.**

Conspiracy

11. Counts 7 and 8 are conspiracy violations. Count 1 charges both a substantive offense and a conspiracy or attempt to commit that substantive offense. Under U.S. law, a conspiracy is simply an agreement to commit one or more criminal offenses. Under U.S. law, the act of combining and agreeing with one or more persons to violate a law of the United States is a crime in and of itself. The agreement on which the conspiracy is based need not be written or even verbal. It may be simply a tacit understanding by two or more persons to do something illegal. The conspirators enter into a partnership for a criminal purpose in which each member or participant becomes a partner or agent of every other member.

12. A person may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the identities of all the other members of the conspiracy. If a person has an understanding of the unlawful nature of a plan and knowingly and willfully agrees to it, joining in the plan, that is enough to convict him for conspiracy even though he did not participate previously and/or played only a minor part. A conspirator can be held criminally responsible for all reasonably foreseeable actions undertaken by other conspirators in furtherance of the criminal partnership. Moreover, because of this partnership, statements

5

made by a conspirator in the course of and while he is a member of the criminal conspiracy are admissible in evidence not only against that conspirator, but also against all other members of the conspiracy. This is so because, as stated earlier, a conspirator acts as an agent or representative of the other conspirators when he is acting in furtherance of their illegal scheme. Therefore, statements of conspirators made in furtherance of the conspiracy may be deemed to be the statements of all conspirators.

13. Under U.S. law, the crime of conspiracy is an independent offense, separate and distinct from the commission of any specific "substantive crimes." Consequently, a conspirator can be found guilty of a crime of conspiracy to commit an offense even where the substantive crime that was the purpose of the conspiracy is not committed. The Congress of the United States has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful, because collective criminal planning poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

Aiding and Abetting

14. Count 9 charges LAWAL with aiding and abetting, in violation of 18 U.S.C. § 2. Section 2 provides that "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." U.S. law further prescribes that a person who aids or abets a crime is one who associates himself with the venture, participates in it as something that he wishes to bring about, and seeks by his action to make it succeed. Under U.S. law, Section 2 provides an alternate theory of liability for a defendant who may or may not have been the principal actor in the commission of the criminal offense.

0:23-cr-00850-CRI    Date Filed 09/01/23    Entry Number 7    Page 7 of 70

15. In this case, the citation to 18 U.S.C. § 2 in Count 9 refers to all of the offenses charged in Counts 1 through 6. That is, Count 9 is not an independent offense, but instead provides notice to LAWAL that he may be convicted of any of Counts 1 through 6 either as the principal actor in the commission of those offenses or as an individual who aided or abetted the commission of those offenses.

Count 1 – Sexual Exploitation of a Child

16. Count 1 charges LAWAL with the substantive offense of sexual exploitation of a minor resulting in death, and conspiracy and attempt to do the same, in violation of 18 U.S.C. §§ 2251(a) and (e). Sexual exploitation of a minor resulting in death, and conspiracy and attempt to do the same, are offenses for which the United States may extradite under its laws. The maximum penalty for sexual exploitation of a minor resulting in death, and for conspiracy and attempt to do the same, is life in prison or death.

17. To satisfy its burden of proof to convict LAWAL on Count 1, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that LAWAL persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, or attempted or conspired to do the same; (2) that the visual depiction was transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce; and (3) that LAWAL engaged in conduct that resulted in the death of a person in the course of the offense.

18. The term "minor" is defined by 18 U.S.C. § 2256(1) as any person under the age of 18 years. Under U.S. law, the term "for the purpose of" means that the defendant acted with the intent to create a visual depiction of sexually explicit conduct, and that the defendant knew the

7

character and content of the visual depiction. The term "sexually explicit conduct," as defined by 18 U.S.C. § 2256(2), includes the lascivious exhibition of the genitals or pubic area of a person. Further, U.S. law indicates that the term "means or facility of interstate or foreign commerce" includes the use of the Internet, a telephone, a computer, or email.

19. The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements and admissions, phones and devices, emails and social media accounts, and Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.

Count 2 – Receipt and Distribution of Child Pornography

20. Count 2 charges LAWAL with the substantive offense of receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). Receipt or distribution of child pornography is an offense for which the United States may extradite under its laws. The maximum penalty for receipt and distribution of child pornography is 20 years in prison.

21. To satisfy its burden of proof to convict LAWAL on Count 2, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that LAWAL received or distributed; (2) any child pornography, or any material that contained child pornography; (3) through any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer; and (4) that LAWAL acted knowingly.

22. The term "child pornography," as defined by 18 U.S.C. § 2256(8)(A), means any visual depiction of sexually explicit conduct where the production of such conduct involved the use of a minor engaging in sexually explicit conduct. U.S. law defines the term "minor" to mean any person under the age of 18 years. As explained above, the term "sexually explicit

conduct" includes the lascivious exhibition of the genitals or pubic area. The term "means or facility of interstate or foreign commerce" includes the use of the Internet, a telephone, a computer, or email.

23. The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements or admissions, phones or devices, emails and social media accounts, and Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.

Count 3 - Coercion and Enticement and Attempted Coercion and Enticement

24. Count 3 charges LAWAL with the substantive offense of coercion and enticement and attempted coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Coercion or enticement of a minor or attempted coercion or enticement of a minor to engage in sexual activity is an offense for which the United States may extradite under its laws. The maximum penalty for this offense is life in prison.

25. To satisfy its burden of proof to convict LAWAL on Count 3, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that LAWAL persuaded, induced, enticed, or coerced a person, or attempted to do so; (2) who had not attained the age of 18 years; (3) to engage in sexual activity for which any person could be charged with a criminal offense (such as the production of child pornography in this case); (4) and in doing so, LAWAL used a facility or means of interstate or foreign commerce, such as the Internet, telephone, a computer, or email; and (5) LAWAL did so knowingly.

26. Under U.S. law, the term "interstate commerce or foreign commerce" includes the use of the Internet, a telephone, a computer, or email. In addition, the terms "persuade," "induce," and

"entice" convey the idea of one person leading or moving another by persuasion or influence, as to action or state of mind.

27. The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements or admissions, phones or devices, emails and social media accounts, and Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.

Count 4 – Cyberstalking Resulting in Death

28. Count 4 charges LAWAL with the substantive offense of cyberstalking resulting in death, in violation of 18 U.S.C. § 2261A(2). Cyberstalking resulting in death is an offense for which the United States may extradite under its laws. The maximum penalty for this offense is life or any term of years in prison.

29. To satisfy its burden of proof to convict LAWAL on Count 4, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) LAWAL, with intent to either harass, intimidate, kill, or injure; (2) used a facility of interstate commerce (including electronic communication services); (3) to engage in a course of conduct; (4) that placed the victim in reasonable fear of death or serious bodily injury, or caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that victim; and (5) the death of another person resulted.

30. The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements or admissions, phones or devices, emails and social media accounts, and Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.

Count 5 – Interstate Threat with Intent to Extort

31. Count 5 charges LAWAL with the substantive offense of making an interstate threat with intent to extort, in violation of 18 U.S.C. § 875(d). Interstate threat with intent to extort is an offense for which the United States may extradite under its laws. The maximum penalty for this offense is two years in prison.

32. To satisfy its burden of proof to convict LAWAL on Count 5, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that LAWAL transmitted in interstate or foreign commerce a communication; (2) the communication contained a threat to injure the property or reputation of the addressee, or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime; and (3) LAWAL did so with intent to extort any money or other thing of value from any person.

33. Under U.S. law, as previously noted, the term "interstate or foreign commerce" includes the use of the Internet, a telephone, a computer, or email. In addition, a threatening statement must amount to a "true threat" rather than mere political hyperbole or idle chatter.

34. The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements or admissions, phones or devices, emails and social media accounts, and Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.

Count 6 – Wire Fraud

35. Count 6 charges LAWAL with the substantive offence of wire fraud, in violation of 18 U.S.C. § 1343. Wire fraud is an offense for which the United States may extradite under its laws. The maximum penalty for this offense is 20 years in prison.

36. To satisfy its burden of proof to convict LAWAL on Count 6, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that the defendant devised or intended to devise a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises that were material; and (2), for purposes of executing that scheme, the defendant did transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds.

37. Under U.S. law, "interstate or foreign commerce" includes the use of the Internet, a telephone, a computer, or email.

38. U.S. law defines the words "scheme and artifice" to include any plan or course of action intended to deceive others and to obtain by either false or fraudulent pretenses, representations or promises, either money or property from persons who are so deceived. A statement or representation is false or fraudulent if known to be untrue or made with reckless indifference as to the truth or falsity and made or caused to be made with the intent to deceive or defraud. A scheme to defraud requires that the government prove that the defendant acted with the specific intent to deceive or cheat for the purpose of getting financial gain for himself or causing financial loss to another. Thus, the government must prove that the defendant intended to deceive someone through the scheme.

39. For purposes of wire fraud under 18 U.S.C. § 1343, "property" must be the object of the fraud, not a mere change of regulatory rules.

40. The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements or admissions, phones or devices, emails and social media accounts,

and Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.

Count 7 – Wire Fraud Conspiracy

41.  Count 7 charges LAWAL with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Conspiracy to Commit Wire Fraud is an offense for which the United States may extradite under its laws. The maximum penalty for this offense is 20 years in prison.

42.  To satisfy its burden of proof to convict LAWAL of conspiracy to commit wire fraud, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that two or more persons entered an agreement to commit the underlying offense of wire fraud, as described above; (2) that LAWAL knowingly became a member of the conspiracy to commit the underlying offense; and (3) that at least one co-conspirator committed at least one overt act in furtherance of the conspiracy. An overt act is any action taken to further the objective of the conspiracy, and it need not itself be a criminal act.

43.  The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements or admissions, phones or devices, emails and social media accounts, and evidence from Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.


Count 8 – Conspiracy

44.  Count 8 charges LAWAL with conspiracy to commit substantive offenses against the United States, specifically, the offenses charged in Counts 1 through 5 (*i.e.*, sexual exploitation of a child and production of child pornography resulting in death; receipt and distribution of child pornography; coercion and enticement of a minor to engage in sexual activity; cyberstalking

resulting in death; and interstate threat with intent to extort), in violation of 18 U.S.C. § 371. Conspiracy to commit any of the above-listed offenses is an offense for which the United States may extradite under its laws. The maximum penalty for conspiracy to commit substantive offenses against the United States, specifically those offenses charged in Counts 1 through 5, is five years in prison.

45. To satisfy its burden of proof and convict LAWAL on this count, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that two or more persons came to an agreement to commit any or all of the underlying offenses described in Counts 1 through 5 above; (2) that LAWAL knowingly became a member of the conspiracy to commit the underlying offense(s); and (3) that at least one co-conspirator committed at least one overt act in furtherance of the conspiracy.

46. The United States, at trial, will establish these elements primarily through an analysis of LAWAL's statements or admissions, phones or devices, emails and social media accounts, and Minor Victim's phones or devices, emails, and social media accounts, as well as testimony from Minor Victim's family and friends.

Statute of Limitations

47. Under 18 U.S.C § 3299, there is no statute of limitations applicable to Counts 1, 2, 3, and aiding and abetting Counts 1, 2, and 3, which means prosecution may commence at any time after the offense is committed. The statute of limitations applicable to all remaining counts is 18 U.S.C. § 3282, which allows prosecution to commence within five years after the offense or offenses were committed. A copy of these statutes is included as part of **Exhibit C.**

48. The statute of limitations for conspiracies with an overt act requirement runs from the date of commission of the last overt act. For conspiracy statutes without an overt act requirement, it runs from the accomplishment of the objectives of the conspiracy or from its abandonment.

49. I have thoroughly reviewed the applicable statutes of limitation. There is no limitation on prosecution of the offenses charged in Counts 1, 2, and 3, or aiding and abetting Counts 1, 2, and 3. The statute of limitations for the remaining counts is five years, and because the offenses occurred on July 26 and 27, 2022, Counts 4 through 8, and aiding and abetting Counts 4 through 8 will become time-barred no earlier than July 26 and 27, 2027. Accordingly, under U.S. law, the passage of time does not serve as a bar to the prosecution of LAWAL for any of the offenses in the complaint.

50. LAWAL has not been tried or convicted for the offenses charged in the complaint, nor has he been ordered to serve any sentence in connection with this case.

## SUMMARY OF THE FACTS

51. On or about July 27, 2022, a 17-year-old victim (Minor Victim) died by a self-inflicted gunshot wound to the head in Rock Hill, South Carolina, after LAWAL and his coconspirators threatened him, extorted him, and caused him to produce child pornography. The evidence also indicates that LAWAL continued threatening and extorting Minor Victim even after the latter had told LAWAL he had paid them all the money he had, and that Minor Victim had a gun sitting on his lap.

52. Investigators determined that LAWAL used an account named "Bellajannet28" on the social media application Instagram to extort Minor Victim for money after Minor Victim sent naked photographs of himself to Bellajannet28. The Bellajannet28 account purported to be of a young, attractive woman, which LAWAL, the user of Bellajannet28, exploited to entice Minor Victim into producing and sharing pornographic images of himself. Specifically,

Minor Victim asked for BellaJannet28 to send a picture of her breasts, and BellaJannet28 responded asking Minor Victim to send a picture, saying, "I'm horny anyways." BellaJannet28 continued to push Minor Victim, ultimately asking Minor Victim to provide a nude image of himself: "I dare you to stripe [sic] naked and show me your dick."

53.  In response to BellaJannet28's request, Minor Victim sent three nude images of himself to BellaJannet28 on Instagram.  Once LAWAL received the images, LAWAL directed Minor Victim to send money via Venmo to his co-conspirator @Isaiah-Lewis-111 (Co-Conspirator).

54.  Minor Victim sent $25.00 to Co-Conspirator @Isaiah-Lewis-111.  But Bellajannet28 continued to demand more money and tell Minor Victim the payment was not enough.  Minor Victim replied: "Thats all I have, I swear," and "I can get you 25 more next monday." Bellajannet28 wrote, "My fellow guys here said that amount is too small and we have no other choice than to ruin your life." Minor Victim was unable to pay the extortion demanded by Bellajannet28.  Law enforcement responded to Minor Victim's home the same night as the final communications between Bellajannet28 and Minor Victim, and found Minor Victim dead by a self-inflicted gunshot wound to the head.

55.  Investigators lawfully obtained records of the Bellajannet28 Instagram account, which identified Minor Victim as a victim of sex-based extortion.  Investigators found Bellajannet28 requested payments be made through a Venmo account to Co-Conspirator @Isaiah-Lewis-111.  The investigators then lawfully obtained records related to the Co-Conspirator's Venmo account, which showed that Minor Victim sent $25.00 to Co-Conspirator's Venmo account.  As part of the conspiracy, Co-Conspirator would receive

such funds and then digitally transfer them over the internet to coconspirators, including LAWAL, who are located in Nigeria.

56. Shortly after Minor Victim's death, Instagram deactivated "BellaJannet28" for violating the terms of service. Around that same time, BellaJannet30 began contacting Minor Victim and his family members. One of Minor Victim's parents (Father) was and remains a public office holder in the State of South Carolina, a fact that LAWAL knew and exploited, threatening to publicly leak the pornographic images of Minor Victim to cause reputational harm unless extortion payments were made.

57. Between July 27 and August 11, 2022, LAWAL contacted multiple family members of Minor Victim through the BellaJannet30 account. His tactics ranged from invoking sympathy for BellaJannet30, who claimed to be Minor Victim's girlfriend, to making overt threats to ruin Father's political career. BellaJannet30 distributed the child pornography images in some of those chats, with the nude images of Minor Victim displayed on an edited newspaper headline or in collages of multiple pictures. During that period, BellaJannet30 attempted to contact Minor Victim and his family approximately 50 times. This included sending three child pornography images of Minor Victim to the latter's younger brother, and also contacting Father at the Instagram account associated with Father's political campaign, saying "I have something crucial to discuss with you," and "Hey, it about your son."

58. Beginning around July 29, 2023, Nigerian authorities including the Economic and Financial Crimes Commission (EFCC) located, apprehended, and interviewed LAWAL pursuant to Nigerian law. On August 4, 2023, the EFCC interviewed LAWAL in Lagos, Nigeria, and LAWAL confessed to participating in the sextortion scheme that caused Minor Victim's death. LAWAL also consented to searches of three phones seized from him during his arrest,

and the content of these phones further corroborated LAWAL's participation in this and other

sextortion schemes.

59.    Additional facts are presented in more detail in the affidavit of Task Force Officer (FBI)

Robert M. Hamilton, which is attached to this affidavit as **Exhibit D.**

## IDENTIFICATION AND LOCATION INFORMATION

60.    Hassanbunhussein Abolore LAWAL, also known as "Bella Jannet," "BellaJannet28,"

"BellaJannet30," "Alice Conner," "Aliceconnor566," "Hassan Lawal," and "Lawal Hassan,"

is a citizen of Nigeria, born on August 28, 2000, in Nigeria.  LAWAL is believed to have

resided on Ife-Ibadan Road, off Oni Street, in Ife, Osun State, Nigeria, and to have held

Nigerian Bank Verification Number 22544270143.  LAWAL is currently in the custody of

Nigerian officials in Lagos, Nigeria.

61.    A photograph of LAWAL is attached to Task Force Agent Hamilton's affidavit and made

part of this extradition request.  This photograph has been identified as LAWAL by Special

Agent Karen Ryndak.

## CONCLUSION

62. I have attached to this affidavit the following documents:

    **Exhibit A**:    Certified copy of criminal complaint

    **Exhibit B**:    Certified copy of arrest warrant

    **Exhibit C**:    Relevant legal provisions

    **Exhibit D**:    Affidavit of FBI Task Force Agent Robert M. Hamilton

    **Attachment 1**: Photograph of LAWAL

63. This affidavit, including its exhibits, contain sufficient evidence to support the request of the United States of America that LAWAL be extradited from Nigeria to the United States of America, District of South Carolina, for prosecution for the offenses described above and that he be detained pending the determination of his extradition including any appeal.

64. This affidavit and the affidavit of FBI Task Force Agent Robert M. Hamilton were each sworn to before a United States Magistrate Judge for the District of South Carolina, who is a person authorized to administer an oath for this purpose.

Respectfully Submitted

_____
A. LOTHROP MORRIS
ASSISTANT U.S. ATTORNEY
DISTRICT OF SOUTH CAROLINA

Subscribed and sworn to before me
This _18th_ day of _September_ 2023

_____
HON. SHIVA V. HODGES
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF SOUTH CAROLINA

# EXHIBIT A

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of South Carolina

| | |
|---|---|
| United States of America<br>v.<br><br>Hassanbunhussein Abolore Lawal<br>a/k/a Bellajannet28, a/k/a Bellajannet30,<br>a/k/a Aliceconnor566, a/k/a Lawal Hassan,<br>a/k/a Hassan Lawal<br><br>_____<br>*Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) Case No <br> ) <br> ) <br> ) |

A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

by *Theresa Tillman*

DEPUTY CLERK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___July 26-27, 2022___ in the county of ___York___ in the

___District of ___South Carolina___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ (1) § 2251(a) and 2251 (e); (2) § 2252A(a)(2); (3) § 2422 (b); (4) § 2261A; (5) § 875(d); (6) § 1343; (7) § 1349; (8) § 371; and (9) § 2 | (1) Sexual Exploitation of a Child and Production of Child Pornography Resulting in Death, and Conpisracy and Attempt; (2) Distribution of Child Pornography; (3) Coercion and Enticement and Attempted Coercion and Enticement; (4) Cyberstalking Resulting in Death; (5) Interstate Threat with Intent to Extort; (6) Wire Fraud; (7) Wire Fraud Conspiracy; (8) Criminal Conspiracy; and (9) Aiding and Abetting on July 26-27, 2022 and other dates described in Affidavit. |

This criminal complaint is based on these facts:

Pleae see attached Affidavit of FBI TFO Robert M. Hamilton.

☐ Continued on the attached sheet.

_____
*Complainant's signature*

FBI TFO Robert M. Hamilton
*Printed name and title*

Sworn to via telephone after submission by reliable electronic means. Fed. R. Crim. P. 4.1, 41(d) (3).

Date: ___08/11/2023___

_____
*Judge's signature*

City and state: ___Columbia, South Carolina___

Shiva V. Hodges, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

UNITED STATES OF AMERICA

v.

Hassanbunhussein Abolore Lawal
    a/k/a Bellajannet28
    a/k/a Bellajannet30
    a/k/a Aliceconnor566
    a/k/a Lawal Hassan
    a/k/a Hassan Lawal

Case No. _____



A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

_Theresa Sillman_
DEPUTY CLERK

### Affidavit in Support of an Application for a Criminal Complaint

I, Robert M. Hamilton, a federally sworn Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF), being duly sworn, state as follows:

### I.    Introduction and Agent Background

1.    I am a TFO with the FBI and have served in that capacity since March 2016. Prior to this, I was a Special Agent with the FBI. In January 2006, I received training in criminal and counterterrorism investigations through the FBI's training academy in Quantico, Virginia. From April 2006 through August 2008, I was assigned to the FBI Columbia Field Office where I investigated matters of Violent Crime, Terrorism, and Child Exploitation. From March 2010 through April 2012, I was assigned to the New York Field Office investigating in child exploitation and human trafficking. I am currently assigned to the FBI Columbia Field Office.

2.    The information contained in this affidavit is based upon my personal knowledge and observations, and of records, reports and information received from other law enforcement sources. Some information contained in this affidavit remains in the possession of other law enforcement entities; my descriptions herein are based on my best understanding of the evidence. This affidavit is not intended to convey all the facts of the entire investigation, but rather for the purpose of establishing probable cause to support the issuance of a criminal complaint and arrest warrant.

### II.    Target Offenses

3.    I submit there is probable cause to believe Hassanbunhussein Abolore Lawal (Lawal) a/k/a Bellajannet28, a/k/a Bellajannet30, a/k/a Aliceconnor566, a/k/a Lawal Hassan, a/k/a Hassan Lawal violated the following federal statutes, which are referred to together as the "Target Offenses." I respectfully request this Court approve a Criminal Complaint charging the following:

    a.    _Sexual Exploitation of a Child and Production of Child Pornography Resulting in Death, and Conspiracy and Attempt._ 18 U.S.C. § 2251(a) and 2251(e) makes it a crime to engage in the production of child sexual abuse material, and to attempt and to conspire to do the same, with an enhanced penalty where the death of another person

resulted. That statute has the following relevant elements: (1) First, the defendant employed, used, persuaded, induced, enticed, or coerced any minor to engage in any sexually explicit conduct, or attempted or conspired to do so; (2) Second, the defendant did so for the purpose of either producing any visual depiction of such sexually explicit conduct or transmitting a live visual depiction of such sexually explicit conduct; (3) Third, the defendant knew or had reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, and (4) Fourth, the death of another person resulted.

b.  *Distribution of Child Pornography*. 18 U.S.C. § 2252A(a)(2) makes it a crime to distribute child pornography. The relevant elements are: (1) First, the defendant distributed; (2) Second, any child pornography, or any material that contained child pornography; (3) Third, any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer; and (4) Fourth, that the defendant acted knowingly.

c.  *Coercion and Enticement and Attempted Coercion and Enticement*. 18 U.S.C. § 2422(b) makes it a crime to coerce or entice a minor to engage in sexual activity for which a person may be charged with a criminal offense. The elements of that offense are: (1) First, the defendant persuaded, induced, enticed, or coerced or attempted to do so; (2) Second, another person who had not attained the age of 18 years; (3) Third, to engage in sexual activity for which any person could be charged with a criminal offense (here that would be the production of child pornography); (4) Fourth, in doing so, the defendant used a facility or means of interstate or foreign commerce, such as the Internet, telephone, a computer, or email; and (5) Fifth, the defendant did so knowingly.

d.  *Cyberstalking Resulting in Death*. 18 U.S.C. § 2261A makes it a crime to engage in cyberstalking. The elements of that offense are: (1) First, the defendant, with intent to either harass, intimidate, kill, or injure; (2) Second, used a facility of interstate commerce (including electronic communication services); (3) Third, to engage in a course of conduct; (4) Fourth, placed the victim in reasonable fear of death or serious bodily injury, or "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress;" and (5) Fifth, the death of another person resulted.

e.  *Interstate Threat with Intent to Extort*. 18 U.S.C. § 875(d) makes it a crime to communicate a threat in interstate commerce with the intent to extort. The elements of that offense are: (1) First, the defendant transmitted in interstate or foreign commerce a communication; (2) Second, the communication contained a threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime; and (3) Third, the defendant did so with intent to extort any money or other thing of value from any person, firm, association, or corporation.

f.  *Wire Fraud*. 18 U.S.C. § 1343 makes it a crime to engage in Wire Fraud. The elements of that offense are: (1) First, the defendant devised or intend to devise a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises that were material; and (2) Second, for purposes of executing that scheme, the defendant did transmit or cause to be transmitted by means

of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds.

g. *Wire Fraud Conspiracy*. 18 U.S.C. § 1349 makes it a crime to conspire or reach an agreement with others to commit wire fraud. The elements of wire fraud are above.

h. *Criminal Conspiracy*. 18 U.S.C. § 371 makes it a crime to reach an agreement with another to commit a federal offense. The elements of that offense are: (1) First, two or more persons agreed to do something which federal law prohibits (here, to violate the Target Offenses), (2) Second, the defendant knew of the conspiracy and willfully joined the conspiracy; and (3) Third, at some time during the existence of the conspiracy or agreement and within the limitations period, one of the members of the conspiracy knowingly performed, in the District of South Carolina, one of the overt acts charged in order to accomplish the object or purpose of the agreement.

i. *Aiding and Abetting*. 18 U.S.C. § 2 makes it to aid and abet the commission of a federal offense; here, that is the Target Offenses. The elements of that offense are: (1) First, the crime charged was in fact committed by someone other than the defendant; (2) Second, the defendant participated in the criminal venture as in something that he wished to bring about; (3) Third, the defendant associated himself with the criminal venture knowingly and voluntarily; and (4) Fourth, the defendant sought by his actions to make the criminal venture succeed.

4.    I submit the Target Offenses were committed on or about the dates described in this affidavit, the conspiracies included both those known and unknown at this time, and that the conspiracies, coercion and enticement, wire fraud, and other conduct related to the Target Offenses involved multiple victims and began at a time unknown but at least in or around July 2022 continuing thereafter.

### III.    Probable Cause Lawal Violated Target Offenses

#### Financially Motivated Sextortion

5.    Sextortion is a criminal act and form of sexual exploitation where an offender obtains sexually explicit images or videos depicting a victim, and then threatens to disseminate that imagery (often to family, friends, or schoolmates) in order to demand something from the victim. Types of sextortion may be differentiated based on the motivation of the offender.

6.    In cases of financially motivated sextortion, the offender attempts to extort money or other items of value from the victim. This differs from sexually motivated sextortion, in which the offender demands that a victim produce and send additional imagery for the offender's own use or to distribute to other offenders.

#### Sextortion and Death of Minor Victim

7.    On July 27, 2022, a 17-year-old minor victim (Minor Victim) died by suicide in Rock Hill, South Carolina while he was being threatened and extorted by Lawal, who enticed Minor Victim to engage in the production of child pornography by posing as a young female, and then used those photos of Minor Victim to threaten and extort Minor Victim and his family.

8.     Evidence indicates Lawal continued to extort Minor Victim even after Minor Victim told Lawal that the money paid was all he had, that Minor Victim had a gun sitting on his lap, and that Minor Victim was scared. Lawal continued to threaten and attempt to extort Minor Victim's family even after learning Minor Victim had died.

9.     One of Minor Victim's parents (Parent) was and remains a public office holder in South Carolina; at some point during the sextortion plot, it appears Lawal researched Minor Victim's family and discovered this fact. Lawal threatened to leak child pornography of Minor Victim to cause reputational and political harm to Minor Victim's family unless payment was made.

10.     This investigation began with York County Sheriff's Office (YCSO) responding to the July 27, 2022 suicide death of Minor Victim. When local law enforcement and the South Carolina Law Enforcement Division (SLED) responded to Minor Victim's home in Rock Hill, they learned from his family that Minor Victim had not made suicidal statements and that they were unsure what would have caused this.

11.     YCSO Digital Forensics Laboratory conducted a forensic examination of Minor Victim's phone, and it was discovered that Minor Victim, who was 17 years old at the time, was using his Instagram account to exchange messages with Instagram user BellaJannet28, who portrayed themself as a 19-year-old female. Messages recovered indicate that Minor Victim was the victim of financially motivated sextortion, which caused Minor Victim to produce and send Child Sexual Abuse Material ("CSAM") images of himself to BellaJannet28.[1]

12.     I have reviewed the communications between Minor Victim and BellaJannet28. BellaJannet28 claimed to be a 19-year-old female interested in communicating and exchanging photos with Minor Victim. It appears BellaJannet28 was the first to reach out to Minor Victim, around 10:57pm on July 26, 2022.[2] BellaJannet28 said "hi," Minor Victim responded, and around 12:14am BellaJannet28 sent a photograph that purported to be BellaJannet28, which showed a young adult female with blonde hair in a sweatshirt and underwear. BellaJannet28 said, "That me." That photograph would later be recovered from Lawal's phone.

13.     There is evidence that BellaJannet28 knew Minor Victim was a minor. Minor Victim told BellaJannet28 he was 17 years old, later in the chat BellaJannet28 asked Minor Victim if he was still in high school, Minor Victim indicated that he had just graduated, and when BellaJannet28 began to extort Minor Victim, BellaJannet28 directed Minor Victim to send his parents' money.

14.     BellaJannet28 posed as a specific persona, which included images FBI recovered from Lawal's phone. While BellaJannet28 was chatting with Minor Victim, BellaJannet28 presented images of a blonde Caucasian female. Minor Victim then sent images of himself that were CSAM images.

_____

[1] CSAM is a reference to images or videos that depict a minor in a sexually explicit context, commonly referred to as child pornography.

[2] All of the times referenced in this affidavit are approximate, and they are times local to Minor Victim, Eastern Standard Time. The dates in this affidavit are also approximate, and based on the evidence as understood at this time.

There is evidence those images were produced and shared at BellaJannet28's request. In one chat, BellaJannet28 wrote, "I dare you to stripe naked and show me your dick."

15.     Following requests from BellaJannet28, there is evidence Minor Victim shared what I am referring to as CSAM Photograph 1, CSAM Photograph 2, and CSAM Photograph 3. I have reviewed each of those photographs. Each show Minor Victim in a state of undress, in a sexually explicit context, and each represent CSAM or child pornography within the meaning of the Target Offenses. FBI recovered these images when they were sent by Lawal operating under Instagram username BellaJannet30 to Minor Victim's family and to agents acting in an undercover capacity.

16.     BellaJannet28 used the CSAM images described above to extort Minor Victim and defraud him of money, and BellaJannet30 attempted to do the same with Minor Victim's family following Minor Victim's death. BellaJannet28 threatened to release the images to acquaintances and the media if Minor Victim did not send money.

17.     There is evidence that BellaJannet28 was working together with at least one other person to accomplish this scheme. BellaJannet28 directed Minor Victim to send money to a particular Venmo account operated by Co-Conspirator 1. At 1:21am, BellaJannet28 directed Minor Victim to send the money quickly, "Make it snappy boy." Data recovered from Co-Conspirator 1's Venmo account shows Minor Victim sent $25.00 to Co-Conspirator 1's Venmo account during this extortion.

18.     Co-Conspirator 1 is an adult male in the United States who is believed to have conspired with Lawal and others by receiving funds obtained by fraud and then digitally transferring them to the targets, including Lawal, who are located in Nigeria. There is no evidence that Minor Victim had previous contact with Co-Conspirator 1, or that he had any reason to contact Co-Conspirator 1 other than to transfer funds obtained by extortion as demanded by BellaJannet28.

19.     BellaJannet28 told Minor Victim that the $25.00 transferred to Co-Conspirator 1 was not enough. BellaJannet28 told Minor Victim 1 to go to his parents for money. At 1:22am, Minor Victim told BellaJannet28, "that's all I have I swear", and one minute later, "I can get you 25 more next monday." BellaJannet28 responded, "My fellow guys here said that amount is too small and we have no other choice than to ruin your life." BellaJannet28 claimed if Minor Victim sent $100.00, BellaJannet28 would delete the photos and not send them out to Minor Victim's personal contacts. Minor Victim said he only had $25.00 and that he could not get more at that time. BellaJannet28 told Minor Victim to "send it from your Dad or mums account."

20.     Minor Victim began to reference suicide as the demands continued. In one chat, Minor Victim wrote that he would "rather put a bullet through my skull." BellaJannet28 continued to pressure Minor Victim. "I'm being lenient enough with you, my friends have already asked me to ruin your life cus 25 is too damn small." At 1:33am, Minor Victim wrote that BellaJannet28 didn't "realize how scared I am rn" and that "I was sitting with the pistol."

21.     Around 1:40am, according to the York County Coroner, Minor Victim committed suicide. Around that time, Minor Victim entered a bathroom in his home, a parent heard a loud bang inside the house, and his father broke the bathroom door in. Minor Victim died as a result of a gunshot wound.

22.   At 1:43am, BellaJannet28 told Minor Victim to not to forget to pay or to make BellaJannet28 remind him. BellaJannet28's final message to Minor Victim was, "Take care and have fun."

<u>Attempted Extortion of Family Following Minor Victim's Death</u>

23.   After Minor Victim's death, BellaJannet28 was deactivated by Instagram for a violating terms of service. Around that same time, Instagram user BellaJannet30 began contacting Minor Victim and his family.[3]

24.   Between July 27 and August 11, 2022, BellaJannet30 contacted multiple members of Minor Victim's family. BellaJannet30's tactics ranged from invoking sympathy for BellaJannet30, who claimed to be Minor Victim's girlfriend, to overt threats of ruining the political career of Minor Victim's Parent. BellaJannet30 distributed the CSAM images in some of those chats, including by putting CSAM images of Minor Victim on an edited newspaper headline and by sharing collages of multiple pictures. During that period, BellaJannet30 attempted to contact Minor Victim and his family approximately 50 times. For example:

25.   On July 30, 2022, three days after Minor Victim's death, BellaJannet30 wrote to Minor Victim, "Hey don't joke with me ,I'm going to tag your nudes online both here and on YouTube and you know what that the end of your career."

26.   On August 5, 2022, BellaJannet30 wrote to Minor Victim's younger brother (Younger Brother), claiming to be Minor Victim's girlfriend who was also being extorted. BellaJannet30 wrote, "Actually he got hooked up into some mess and he told me everything,I didn't know it will get to this ,I told him to give them my number so I can plead on his behalf which he did ....cus I don't know how he was convinced to have disseminate all the information about himself and everyone of you in the family. He told them about [Parent],both your home address,office address infact about [Parent's] political career too ,...so they threatened us to get them money, which I help him sought out a little cus I don't have much on me. They gave me few days to balance up ,else they'll ruin his life and also that of the family cus they have enough information to do so.....they sent me some pics and they deleted it , tho they left some let me show it to you."

27.   BellaJannet30 then sent the three CSAM images of Minor Victim to Younger Brother. One was edited to appear as if it was a newspaper headline that included the text, "Breaking News – Minor Victim caught sending nudes on the Internet- This is sexual harassment." One was a "photo grid compilation," of multiple of the CSAM images. BellaJannet30 wrote, "Can I know how he died what caused it" and "I'm saying this cus I know the reason and [Parent's] political career is at stake." BellaJannet30 insisted Younger Brother notify their father to resolve this situation quickly.

28.   Also on August 5, 2022, BellaJannet30 contacted Parent at the Instagram account associated with Parent's political campaign. In one message, "I have something crucial to discuss with you." In another, "Hey ,it about your son."

---

[3] It appears the Instagram username was BellaJannet30, but the vanity name for that account (which is a name that can be changed) was Aliceconnor566.

29.    On August 9, 2022, BellaJannet30 wrote to another Minor Victim relative and claimed to be Minor Victim's girlfriend who was being targeted by scammers. "I think [Parent] is [Minor Victim's] father,, [Minor Victim] gave them all his information, including is political career,which the scammers also threatened to ruin."

30.    On August 10, 2022, BellaJannet30 wrote Younger Brother. "I think have tried already to reach you guys but you refused to listen well it none of my business again,the scammers can go ahead and ruin your family including [Parent's] political career Cus [Minor Victim] gave them all the family information including your home address."

31.    On August 10, 2022, agents obtained consent to assume Younger Brother's online identity through his Instagram account. Agents conducted an undercover (UC) online chat with Bellajannet30, and during that chat, Bellajannet30 provided multiple accounts that were to receive funds and then forward the same to the subjects blackmailing the family.

32.    Bellajannet30 demonstrated knowledge of what would have known by virtue of Bellajannet28's chat with Minor Victim. Bellajannet30 referenced Minor Victim's death and distributed the CSAM photos to the UC agents, who were posing as Younger Brother. In one chat, Bellajannet30 wrote, "Those are his nude the scammers sent it to me and I told them not to post it that I will assist him pay for the money ,but I didn't know he would go and commit suicide instead."

33.    Bellajannet30 attempted to extort Younger Brother's account, which was being controlled by agents. "This has to stop today," "Cus I'm tired of getting there calls," "Else I might just give them the go ahead to ruin your family and your [Parent's] political career," "It will affect you also," "Well they said they will just have to carry out there operations," and "And ruin the [family's last name] reputation and all."

<u>Identification of Lawal</u>

34.    A review of information from Bellajannet28 and Bellajannet30 accounts revealed that the accounts are likely controlled by the same person, and that the person is Lawal.

35.    First, in addition to the chats described above, search warrants revealed both accounts contained photos and videos used in common, including pictures of Minor Victim and account profile pictures. The content of those accounts also provided evidence that there are numerous other probable minor and adult victims beyond Minor Victim. At least two IP addresses were used by both accounts on multiple logins.

36.    Second, the same phone number was on record with Instagram as the number associated with Bellajannet28 and Bellajannet30 (Lawal's Number). That number was a Nigerian phone number. FBI provided that number and other information related to this scheme to a Consulate Representative at the U.S. Embassy in Nigeria, and to the Economic and Financial Crimes Commission (EFCC), a Federal Nigerian law enforcement agency. The Consulate Representative identified six subscribers to cellular phone numbers associated with this investigation.

37.    In Nigeria, bank customers are registered with the banking system and assigned Bank Verification Numbers, which are searchable by phone number. A review of those records determined that Lawal's Number, which is the verified registration phone number to both Bellajannet28 and Bellajannet30, is a phone number subscribed to Lawal, a 22-year-old Nigerian citizen.

Lawal Interviews and Recovery of Lawal's Devices

38.    I travelled to Lagos, Nigeria on July 29, 2023 in connection with this investigation. While there, pursuant to Nigerian law, the EFCC, U.S. Embassy, and Nigerian authorities identified, located, apprehended, and interviewed Lawal.

39.    The EFCC conducted the first interview on August 4, 2023, and the FBI conducted the second interview on August 7, 2023. Pursuant to Nigerian law, a search upon Lawal's arrest yielded three cellular phones: (1) Phone 1 – a Xiaomi Redmi phone; (2) Phone 2 – an iPhone X; and (3) Phone 3 – an iPhone 11 number that ended in -2483. Evidence from those interviews and phones indicate Lawal is responsible for the extortion on Minor Victim.

40.    On August 4, 2023, Nigerian EFCC conducted an in-custody interview of Lawal at their office in Lagos. I have a copy of the written statement narrated by Lawal to a transcribing officer.[4] At the onset, Lawal was informed that he was not obliged to say anything that he did not wish to, he advised that he freely elected to speak with authorities, and he was informed of his right to have a lawyer or anyone else of his choosing to be present while he made his statement. I am also informed the statement was videotaped.

41.    In that interview, Lawal told EFCC the following: Lawal owned the phone associated with a Nigerian number that ended in -2483, (which is the verified registration number for Bellajannet28 and Bellajannet30). (At Lawal's arrest, agents recovered Phone 3, which is the phone with call number -2483.) Lawal stated that he owned the Bellajannet30, and other accounts identified with variations of the "Bella" account username. He created Bellajannet30 in December 2022.

42.    Lawal admitted that he participates in blackmail. In one area of the statement, he indicated he "started the blackmailing around July." In another, "I am into blackmailing fraud, which I started December 2022." Lawal stated the following:

"I started the blackmailing around July and that was when I met the boy (claimed to be) dead that died. I threatened to post the nude to his family member and his school and I asked him for more money after he paid the $25."

"I had another Instagram account BellaJannet30, which was created around December 2022. I saw an obituary of them so I went checking for the people close to the boy, and I wanted to collect money from them too, by telling them I know him and I'm being blackmailed so if they could give me money to pay those blackmailing me too. The boy that died paid $25 through Zelle and it was placed by [Name]. The phone number for [Name] is [Phone Number] and paid me all 10,000 [believed to be Nigerian currency] after converting the $25."

43.    As for how he was taught, it appears two particular people taught him "through WhatsApp." He further stated:

"That's how I was taught. I should collect their nude, some information about them and then paste it to them and most will block afterwards and some will comply the them are the clients,

---

[4] The handwriting in this statement is difficult to read at times, but I have described the content above to the best of my ability. Further, in part based on this statement, I understand Lawal also identifies as either Hassan Lawal or Lawal Hassan.

who are boys from the (USA) United States of America or any other country. I present myself as bella from Michigan State. I mostly use Instagram for my blackmailing and I don't use any other social media site."

44.    Lawal stated that he used photogrid, something he downloaded, with the photos that he would "later use to blackmail." Lawal uses accounts such as Instagram account BellaJanne25 and e-mail accounts such as bjanne622@gmail.com and bjanne604@gmail.com "for blackmailing."

45.    On August 7, 2023, FBI and an agent with the Australian Federal Police conducted a second interview. In that interview, the agents identified themselves as law enforcement officers per the regulations of their respective nations and agencies. Lawal claimed that he was not being treated well. He claimed that he had not been sleeping well and was still in shock. He claimed that he was beaten and that his life was threatened.

46.    The FBI agent confronted him and said that Lawal had admitted to various things to the EFCC. Lawal began to recant much of his previous statement from the August 4, 2023 interview. Lawal told agents that he was just saying anything the officers wanted to hear so he could go home. The agents asked specifically about the sexual exploitation chats from the Instagram account linked to his phone number. He said he knew it was his phone number but didn't understand.

47.    Lawal then asked for his lawyer to be present. Agents stepped out and returned with his attorney. Lawal made a series of exculpatory statements. He claimed that he did not know anything about Minor Victim. He claimed the account used to communicate with Minor Victim was created by him but that he sold the account in August. He admitted that he chatted with "clients" on Instagram and talked to them like a girlfriend. He admitted to sending nude photos to clients. He claimed he did not use the phone used to "date" Minor Victim; he said he sold the account. He said he does not know "the vendor" who is Co-Conspirator 1. Lawal then was confronted by agents about the IP address for the account used to communicate with Minor Victim. It was created in Italy by an Italian female. Lawal changed his story and said he hacked the account by sending her a link and once she clicked on the link, he had access to the account. He changed the account information and then sold it maybe in September 2021.

48.    Lawal signed an FBI consent form related to the content of his three phones. Among the content found on the phones seized, FBI has identified at least the following:

    a.    The same photograph that BellaJannet28 shared with Minor Victim to initiate their conversation, which depicted the young adult female with blonde hair and in a sweatshirt and underwear as described above;

    b.    The Instagram application was open and logged in to an account with username Bellajanne25;

    c.    Bellajanne25 had the same profile picture (below) as BellaJannet28 and BellaJannet30, which was of who appeared to be a young collegiate girl playing volleyball;



d.  In the content of the WhatsApp application on Phone 1 appears to be an extortion script entitled "Blackmail format my version," which bore many similarities to the scheme used against the Minor Victim, including challenging the user to play truth or dare, exchanging nude photographs, using the Photogrid application to edit photographs received, and then advising the victim that he has everything needed to ruin their life if they don't pay money; and

e.  Evidence that Lawal is likely continuing to engage in extortions with additional likely victims patterns on dates beyond the Minor Victim conduct consistent with that which is described above.

## IV.    Conclusion

49.    Based on the above, I submit there is probable cause to believe Lawal has violated the Target Offenses as described above. Given the same, I respectfully request this Court issue a Criminal Complaint and Arrest Warrant for Hassanbunhussein Abolore Lawal a/k/a Bellajannet28, a/k/a Bellajannet30, a/k/a Aliceconnor566, a/k/a Lawal Hassan, a/k/a Hassan Lawal.

This affidavit has been reviewed by Assistant United States Attorneys Elliott B. Daniels and Lothrop Morris.

I swear, under penalty of perjury, that the forgoing is true and correct to the best of my knowledge.

*< signature block to follow >*

Respectfully Submitted,

Robert M. Hamilton
Task Force Officer
Federal Bureau of Investigation

Sworn this 11th day of August 2023

This affidavit was sworn to by the affiant, who attested to its contents pursuant to
Fed. R. Crim. P. 4.1(b)(2)(A) by telephone after a document was transmitted by
email pursuant to Fed. R. Crim. P. 4.1.

Honorable Shiva V. Hodges
United States Magistrate Judge

# EXHIBIT B

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of South Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| Hassanbunhussein Abolore Lawal a/k/a Bellajannet28, a/k/a Bellajannet30, a/k/a Aliceconnor566, a/k/a Lawal Hassan, a/k/a Hassan Lawal | ) ) ) ) | |
| *Defendant* | ) | |

A TRUE COPY
ATTEST: ROBIN L. BLUME. CLERK

*by* Theresa Tillman
DEPUTY CLERK

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     Hassanbunhussein Abolore Lawal (with the a/k/a identities listed above)                 ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint

☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

(1) Sexual Exploitation of a Child and Production of Child Pornography Resulting in Death, and Conspiracy and Attempt - 18 U.S.C. §§ 2251(a) and 2251(e); (2) Distribution of Child Pornography - 18 U.S.C. § 2252A(a)(2); (3) Coercion and Enticement and Attempted Coercion and Enticement - 18 U.S.C. § 2422(b); (4) Cyberstalking Resulting in Death - 18 U.S.C. § 2261A; (5) Interstate Threat with Intent to Extort - 18 U.S.C. § 875(d); (6) Wire Fraud - 18 U.S.C. § 1343; (7) Wire Fraud Conspiracy - 18 U.S.C. § 1349; (8) Criminal Conspiracy - 18 U.S.C. § 371; and (9) Aiding and Abetting - 18 U.S.C. § 2

Date:     08/11/2023

*Issuing officer's signature*

City and state:     Columbia, South Carolina

Shiva V. Hodges, United States Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____     _____<br>*Arresting officer's signature* |
| _____<br>*Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:   HASSANBUNHUSSEIN ABOLORE LAWAL

Known aliases:   HASSAN LAWAL

Last known residence:   Lagos Nigeria (In-Custody)

Prior addresses to which defendant/offender may still have ties:
Osun, Nigeria

Last known employment:   Never Employed; Student

Last known telephone numbers:   +08133602483

Place of birth:   Osun, Nigeria

Date of birth:   08/28/2000

Social Security number:   Bank Verification Number (BVN): 22544270143

Height:                                                      Weight:

Sex:   Male                                            Race:   Black

Hair:   Black                                          Eyes:   Brown

Scars, tattoos, other distinguishing marks:


History of violence, weapons, drug use:   Unknown


Known family, friends, and other associates *(name, relation, address, phone number)*:


FBI number:   N/A

Complete description of auto:   None


Investigative agency and address:   FBI Columbia, SQ 3, 151 Westpark Blvd, Columbia, SC 29210


Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:


Date of last contact with pretrial services or probation officer *(if applicable)*:   N/A

# EXHIBIT C

This document contains the provisions of U.S. law describing, among other things, the offenses with which HASSANBUNHUSSEIN ABOLORE LAWAL is charged, the applicable statute of limitations, and the penalties that may be imposed if he is convicted.  Asterisks and ellipses are used to indicate portions of the statutes which are omitted because these portions do not apply to the case against HASSANBUNHUSSEIN ABOLORE LAWAL.

**Federal Rules of Criminal Procedure Rule 4**
**Arrest Warrant or Summons on a Complaint**

(a) Issuance. If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it. At the request of an attorney for the government, the judge must issue a summons, instead of a warrant, to a person authorized to serve it. A judge may issue more than one warrant or summons on the same complaint. If an individual defendant fails to appear in response to a summons, a judge may, and upon request of an attorney for the government must, issue a warrant. If an organizational defendant fails to appear in response to a summons, a judge may take any action authorized by United States law.

(b) Form.

    (1) Warrant. A warrant must:

        (A) contain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty;

        (B) describe the offense charged in the complaint;

        (C) command that the defendant be arrested and brought without unnecessary delay before a magistrate judge or, if none is reasonably available, before a state or local judicial officer; and

        (D) be signed by a judge.

    (2) Summons. A summons must be in the same form as a warrant except that it must require the defendant to appear before a magistrate judge at a stated time and place.

(c) Execution or Service, and Return.

    (1) By Whom. Only a marshal or other authorized officer may execute a warrant. Any person authorized to serve a summons in a federal civil action may serve a summons.

    (2) Location. A warrant may be executed, or a summons served, within the jurisdiction of the United States or anywhere else a federal statute authorizes an arrest. A summons to an organization under Rule 4(c)(3)(D) may also be served at a place not within a judicial district of the United States.

    (3) Manner.

        (A) A warrant is executed by arresting the defendant. Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the defendant. If the officer does not possess the warrant, the officer must inform the defendant of

the warrant's existence and of the offense charged and, at the defendant's request, must show the original or a duplicate original warrant to the defendant as soon as possible.

(B) A summons is served on an individual defendant:

> (i) by delivering a copy to the defendant personally; or

> (ii) by leaving a copy at the defendant's residence or usual place of abode with a person of suitable age and discretion residing at that location and by mailing a copy to the defendant's last known address.

(C) A summons is served on an organization in a judicial district of the United States by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process. If the agent is one authorized by statute and the statute so requires, a copy must also be mailed to the organization.

(D) A summons is served on an organization not within a judicial district of the United States:

> (i) by delivering a copy, in a manner authorized by the foreign jurisdiction's law, to an officer, to a managing or general agent, or to an agent appointed or legally authorized to receive service of process; or

> (ii) by any other means that gives notice, including one that is:

>> (a) stipulated by the parties;

>> (b) undertaken by a foreign authority in response to a letter rogatory, a letter of request, or a request submitted under an applicable international agreement; or

>> (c) permitted by an applicable international agreement.

(4) Return

> (A) After executing a warrant, the officer must return it to the judge before whom the defendant is brought in accordance with Rule 5. The officer may do so by reliable electronic means. At the request of an attorney for the government, an unexecuted warrant must be brought back to and canceled by a magistrate judge or, if none is reasonably available, by a state or local judicial officer.

> (B) The person to whom a summons was delivered for service must return it on or before the return day.

(C) At the request of an attorney for the government, a judge may deliver an unexecuted warrant, an unserved summons, or a copy of the warrant or summons to the marshal or other authorized person for execution or service.

(d) Warrant by Telephone or Other Reliable Electronic Means. In accordance with Rule 4.1, a magistrate judge may issue a warrant or summons based on information communicated by telephone or other reliable electronic means.

<u>**Title 18, United States Code, Section 2**</u>
**Principals**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

<u>**Title 18, United States Code, Section 371**</u>
**Conspiracy to Commit Offense or to Defraud United States**

If two or more persons conspire either to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

\* \* \*

### Title 18, United States Code, Section 875
#### Interstate communications

\* \* \*

(d)    Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

## Title 18, United States Code, Section 1343
### Fraud by wire, radio, or television

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

## <u>Title 18, United States Code, Section 1349</u>
### Attempt and conspiracy

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## Title 18, United States Code, Section 2422
### Coercion and Enticement

(a)    Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

(b)    Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

### Title 18, United States Code, Section 2251
### Sexual Exploitation of Children

(a)    Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e) ... if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

\*   \*   \*

(e)    Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years ... . Whoever, in the course of an offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for not less than 30 years or for life.

### Title 18, United States Code, Section 2252A
**Certain Activities Relating to Material Constituting or Containing Child Pornography**

(a)     Any person who—

    …

    (2) knowingly receives or distributes—

        (A) any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer

        …

    shall be punished as provided in subsection (b).

(b)     (1) Whoever violates, or attempts or conspires to violate, paragraph … (2) … of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years … .

**Title 18, United States Code, Section 2256**
**Definitions for Chapter**

For the purposes of this chapter, the term—

(1) "minor" means any person under the age of eighteen years;

(2) (A)    Except as provided in subparagraph (B), "sexually explicit conduct" means actual or simulated—

        (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

        (ii) bestiality;

        (iii) masturbation;

        (iv) sadistic or masochistic abuse; or

        (v) lascivious exhibition of the anus, genitals, or pubic area of any person;

* * *

(3) "producing" means producing, directing, manufacturing, issuing, publishing, or advertising;

* * *

(5) "visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format;

(6) "computer" has the meaning given that term in section 1030 of this title;

* * *

(8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

    (A)    the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

* * *

**Title 18, United States Code, Section 2261A**
**Stalking**

Whoever—

    (1) …

        (A) places that person in reasonable fear of the death of, or serious bodily injury to—

            (i)     that person;

            (ii)    an immediate family member (as defined in section 115) of that person;

            (iii)   a spouse or intimate partner of that person; or

            (iv)   the pet, service animal, emotional support animal, or horse of that person

        …

    (2) … uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—

        …

        (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),

shall be punished as provided in section 2261(b) or section 2261B, as the case may be.

**Title 18, United States Code, Section 2261**
**Interstate Domestic Violence**

\* \* \*

(b) Penalties.—A person who violates this section or section 2261A shall be find under this title, imprisoned—

    (1) for life or any term of years, if death of the victim results;

    …

    (5) for not more than 5 years, in any other case,

or both fined and imprisoned.

## Title 18, United States Code, Section 2266
### Definitions

In this chapter:

* * *

(2) Course of Conduct.—
The term "course of conduct" means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose.

* * *

(7) Spouse or Intimate Partner.—The term "spouse or intimate partner" includes—

    (A) for purposes of—

        ...

      (ii) section 2261A—

          (I) a spouse or former spouse of the target of the stalking, a person who shares a child in common with the target of the stalking, and a person who cohabits or has cohabited as a spouse with the target of the stalking; or

          (II) a person who is or has been in a social relationship of a romantic or intimate nature with the target of the stalking, as determined by the length of the relationship, the type of the relationship, and the frequency of interaction between the persons involved in the relationship.

**Title 18, United States Code, Section 3282**
**Offenses Not Capital**

(a) In General.—

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

\* \* \*

### Title 18, United States Code, Section 3299
### Child Abduction and Sex Offenses

Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 [including sections 2251 and 2252A] (except for section 2257 and 2257A), or 117 [including section 2422], or section 1591.

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

UNITED STATES OF AMERICA

v.

HASSANBUNHUSSEIN ABOLORE LAWAL

CASE NUMBER: 0:23-mj-35-MCRI

AFFIDAVIT IN SUPPORT
OF REQUEST FOR
EXTRADITION

I, Robert M. Hamilton, being duly sworn, hereby depose and state:

1.  I am a citizen of the United States and a resident of the State of South Carolina.

2.  I am currently employed as a Task Force Officer (TFO) with the Federal Bureau of
    Investigation (FBI) and have been employed as such since 2016. Prior to this, I was a Special
    Agent with the FBI since 2006. My current duties involve investigating crimes involving
    computer-facilitated criminality, child exploitation, terrorism, and conspiracies to commit
    those crimes.

3.  The FBI is one of the agencies within the United States government responsible for the
    enforcement of federal criminal law. As an FBI Task Force Officer, I have received training
    relating to the investigation of fraud and use of computers to facilitate fraud offenses.

4.  I am the primary investigator assigned to the investigation of the elaborate extortion and
    fraudulent activities of HASSANBUNHUSSEIN ABOLORE LAWAL, also known as
    "Bella Jannet," "BellaJanne25," "BellaJannet28," "BellaJannet30," "Alice Conner,"
    "Aliceconnor566," "Hassan Lawal," and "Lawal Hassan" (LAWAL). I am familiar with the
    charges and evidence in this case and have been the lead case agent since July 2022. The
    facts set forth in this affidavit are based on my personal knowledge, information supplied to
    me by other law enforcement personnel, and other sources of information. I am familiar with

1

all aspects of this investigation. The following is a summary of the evidence lawfully obtained during this investigation and does not reflect my entire knowledge of the investigation. In addition, the evidence discussed in this affidavit does not represent all of the evidence collected during the investigation.

## BACKGROUND

5.    In July 2022, a 17-year-old male (Minor Victim)[1] died by a self-inflicted gunshot to the head in Rock Hill, South Carolina, while he was being threatened and extorted via Instagram. The investigation revealed that an Instagram user with the username Bellajannet28 solicited child pornography from Minor Victim, and then threatened to release the images to Minor Victim's family and school if he did not produce more money. The Minor Victim paid twenty-five U.S. dollars[2] to an account provided by Bellajannet28, and then Minor Victim told Bellajannet28 that he had a gun in his lap and if the pictures were sent out, he would "go out." Bellajannet28 continued to pressure Minor Victim through direct messages, and ultimately, Minor Victim committed suicide. The investigation into this matter revealed that LAWAL had registered the Bellajannet28 Instagram account using his cellular telephone number. After Instagram shut down the Bellajannet28 account and LAWAL learned of the death of Minor Victim, LAWAL began extorting and soliciting money from Minor Victim's family and Instagram contacts using another Instagram account identified as Bellajannet30. This account was also registered using LAWAL's cellular telephone number.

---

[1] The identities of the victims have been withheld to protect their privacy, and/or that of their surviving family members. Consistent with U.S. law, LAWAL will be provided information necessary for his defense prior to trial.

[2] All references to currency are in U.S. dollars unless otherwise noted.

## SUMMARY OF THE INVESTIGATION

6.   Following Minor Victim's death, his parents advised investigators that he had not made any suicidal statements and they were unsure of what would have driven him to do this. Hoping to find a reason behind the abrupt suicide, the York County Sheriff's Office Digital Forensics Laboratory conducted a lawful forensic examination of Minor Victim's cellular telephone, and it was discovered that Minor Victim was utilizing an Instagram account to exchange direct messages with Instagram account user "Bellajannet28," who purported to be a 19-year-old female.

7.   Instagram Direct Messages found on the phone indicated that Minor Victim had been the victim of sextortion and had sent Child Sexual Abuse Material (CSAM) images of himself to an account identified by the username Bellajannet28. Minor Victim was under the impression he was playing "truth or dare" with a 19-year-old female, and nude photographs were exchanged by the chat participants. Bellajannet28 presented nude images of a blonde Caucasian female that had been taken from a pornography website, and Minor Victim sent images of himself in a state of undress. Upon receipt of the CSAM images, Bellajannet28 then threatened to release the images to all acquaintances and the media if Minor Victim did not send money.

8.   More specifically, at some point between 04:36:11 and 05:20:31 Coordinated Universal Time (UTC), Minor Victim sent CSAM images of himself to Bellajannet28 via Instagram. Using the Instagram account "Bellajannet30," LAWAL later shared these images with members of Minor Victim's family and with law enforcement who were acting in an undercover capacity. The images are described as:

3

a.   CSAM Image 1 depicts Minor Victim holding his semi-erect penis in his left hand. The camera is focused in on his genitalia. He is wearing a white shirt with black print and black bottoms.

b.   CSAM Image 2 depicts Minor Victim holding his erect penis in his left hand. In this image, his face is visible and he is pulling up his white t-shirt with his teeth. He is wearing a white T-shirt with black text and black bottoms.

c.   CSAM Image 3 depicts Minor Victim reclining on a white chair or daybed. The camera is focused on his genitalia and he is holding his erect penis in his left hand. His face is not visible in the picture. He is wearing a white T-shirt with black print and black bottoms.

9.   Upon receiving the CSAM images from Minor Victim, Bellajannet28 demanded that Minor Victim send money via Venmo, an electronic payment platform, to "@Isaiah-Lewis-111," telling him to "Make it snappy boy" at 05:21:29 UTC. A lawfully obtained search warrant served on Venmo indicated that, at approximately 05:21:00 UTC on July 26, 2022, the user of Venmo Account @Isaiah-Lewis-111 received a $25.00 transfer from Minor Victim using Minor Victim's Gmail account. The user of Venmo Account @Isaiah-Lewis-111 has been positively identified through lawful search warrants of his residence, subpoenas of his accounts, and an in-person interview as Isaiah Lewis, of Raytown, Missouri. Minor Victim has had no other contact and had no identifiable relationship with Isaiah Lewis prior to the Venmo transaction.

10.   The conversation continued with Bellajannet28 pressuring Minor Victim to send more money. Bellajannet28 suggested that, if Minor Victim sent $100.00, the images would be deleted and not sent out to this personal contacts. However, Minor Victim advised that he

4

only has $25.00, and cannot get more. Bellajannet28 then told him he should "send it from your Dad or mums account." Minor Victim replied that he "can't do that" and that he would "rather put a bullet through my skull." Bellajannet28 continued to pressure him to send more money, and Minor Victim insisted that he cannot. Bellajannet28 told him "... I'm being lenient enough with you, my friends have already asked me to ruin your life cus 25 is too damn small." At 05:33:26 UTC, Minor Victim told Bellajannet28 that she didn't "realize how scared I am rn" and that "I was sitting with the pistol." He further stated, "if it got sent out, I was gonna go out."

11. On or about July 27, 2022, the York County Coroner conducted a forensic examination of Minor Victim. York County Coroner Sabrina Gast summarized her findings in an official report (the "Coroner's Report"), dated July 27, 2022. It is apparent through the Coroner's Report that Minor Victim had died by 05:40 UTC. However, at 05:43:09 UTC, Bellajannet28 told Minor Victim not to forget to pay and not to make her remind him. Bellajannet28's final text message was "Take care and have fun" sent at 05:43:15 UTC.

12. The Instagram Account Bellajannet28 was deactivated on July 28, 2022, due to violating Instagram's terms of service. It was at this time that the "Bellajannet30" account began messaging Minor Victim and his associates.

13. Between July 27, 2022, and August 11, 2022, the user of Instagram account Bellajannet30 began contacting Minor Victim's account, as well as multiple family members and friends of Minor Victim, through Instagram. Bellajannet30 sent Direct Messages for the purpose of extortion and solicitation of money to Instagram contacts of Minor Victim. The tactics ranged from invoking sympathy for Minor Victim's secret online girlfriend, to threats of ruining the political career of Minor Victim's father (Father). Many Direct Messages

5

involved the transmission or sharing of the original CSAM images re-edited to appear as newspaper headlines and collages of multiple pictures. During that period, Bellajannet30 attempted to contact the Minor Victim's family approximately 50 times for the purpose of continued exploitation and extortion. A few examples follow:

    i.  Message received posthumously by an account held by Minor Victim:

        Author aliceconnor566 (Instagram: 4535903731)
        Sent 2022-07-30 23:12:51 UTC
        Body Hey don't joke with me ,I'm going to tag your nudes online both here and on YouTube and you know what that the end of your career

    ii.  Message received by Minor Victim's Cousin via an account held by Minor Victim's Cousin:

        Author aliceconnor566 (Instagram: 4535903731)
        Sent 2022-08-09 22:44:52 UTC
        Body I think [Father] is [Minor Victim] father, [Minor Victim] gave them all his information, including is political career, which the scammers also threatened to ruin

    iii.  Two Messages received in succession by Father via an account held by Father:

        Author aliceconnor566 (Instagram: 4535903731)
        Sent 2022-08-05 10:11:52 UTC
        Body I have something crucial to discuss with you

        Author aliceconnor566 (Instagram: 4535903731)
        Sent 2022-08-05 16:50:10 UTC Body Hey ,it about your son

14.   On August 5, 2022, at 23:50:42 UTC, Bellajannet30 informed Younger Brother that:

"Actually he got hooked up into some mess and he told me everything,I didn't know it will get to this ,I told him to give them my number so I can plead on his behalf which he did ....cus I don't know how he was convinced to have disseminate all the information about himself and everyone of you in the family. He told them about [Father],both your home address,office address infact about his political career too ,...so they threatened us to get them money, which I help him sought out a little cus I don't have much on me. They gave me few days to balance up ,else they'll ruin his life and also that of the family cus they have enough

information to do so.....they sent me some pics and they deleted it , tho
they left some let me show it to you"

15.   Bellajannet30 then sent the following images of CSAM depicting Minor Victim to Younger

Brother:

> Author aliceconnor566 (Instagram: 4535903731)
> Sent 2022-08-05 23:54:22 UTC
> Body You sent a photo.
> Attachments image-2838219186486800 (2838219186486800)
> (Note: aliceconnor566/Bellajannet30 user sent a compilation of 6 CSAM Images
> composed of CSAM Images #1, 2, and 3 of subject Minor Victim)
>
> Author aliceconnor566 (Instagram: 4535903731)
> Sent 2022-08-05 23:54:23 UTC
> Body You sent a photo.
> (Note: aliceconnor566/Bellajannet30 user sent a photoshop style image of a
> falsified headline stating: "Breaking News – [Minor Victim] caught sending
> nudes on the Internet- This is sexual harassment" with a close-up image of Minor
> Victim's erect penis believed to have been taken from CSAM Image #3.)
>
> Author aliceconnor566 (Instagram: 4535903731)
> Sent 2022-08-05 23:54:24 UTC
> Body You sent a photo.
> Attachments image-608063817705104 (608063817705104)
> (Note: aliceconnor566/Bellajannet30 user sent a "photogrid compilation" of
> CSAM Images #1, 2, and 3 of subject Minor Victim)

16.   The harassment and extortion continued.   On August 10, 2022 at 14:26:36 UTC,

Bellajannet30 sent the following message to Younger Brother: "I think have tried already to

reach you guys but you refused to listen well it none of my business again,the scammers can

go ahead and ruin your family including [Father]  political career Cus [Minor Victim] gave

them all the family information including your home address."

17.   On August 10, 2022, investigators obtained consent to assume the online identity that is

Younger Brother's Instagram account.   Agents then conducted an undercover (UC) online

chat with Bellajannet30.   During the UC chat, multiple accounts were provided by

Bellajannet30 that Bellajannet30 indicated were to receive funds and then forward them to

the individuals blackmailing Minor Victim's family. These accounts were preserved, and legal process was requested to identify account subscriber information.

18. During the UC chat, which was recorded, Bellajannet30 provided knowledge previously known only to Bellajannet28 and referenced Minor Victim's suicide. Additionally, Bellajannet30 shared CSAM images of Minor Victim with the UC officers. For example, on August 10, 2022, around 14:28, Bellajannet30 sent the officers posing as Younger Brother a "photogrid compilation" of the three previously identified CSAM images of Minor Victim and the message, "Those are his nude the scammers sent it to me and I told them not to post it that I will assist him pay for the money ,but I didn't know he would go and commit suicide instead."

19. As the conversation with the officers progressed, Bellajannet30 increased pressure on "Younger Brother" to comply with demands, by making threats to ruin Father's political career and reputation. For example, on August 10, 2022 at 16:40, Bellajannet30 wrote, "This has to stop today," "Cus I'm tired of getting there calls," "Else I might just give them the go ahead to ruin your family and your Dad political career," "It will affect you also," "Well they said they will just have to carry out there operations," and "And ruin the [Family] reputation and all."

20. Lawfully obtained records from Bellajannet30's Instagram Account revealed conversations between Younger Brother and the account user of Bellajannet30. Contact began on August 5, 2022, and continued through August 10, 2022. Bellajannet30 posed as Minor Victim's concerned girlfriend and attempted to elicit sympathy from Younger Brother by informing him that the "scammers" were now coming after her for Minor Victim's remaining debts.

The user of the Bellajannet30 account asked Younger Brother how the Minor Victim died and informed Younger Brother that his father's political career was at stake:

> Author bellajannet30 (Instagram: 4535903731)
> Sent 2022-08-05 22:33:42 UTC
> Body Can I know how he died what caused it

> Author bellajannet30 (Instagram: 4535903731)
> Sent 2022-08-05 22:34:50 UTC
> Body I'm saying this cus I know the reason and Dad's political career is at stake

21. A comparison of lawfully obtained records from both the Bellajannet28 and Bellajannet30 accounts revealed that the accounts contained multiple photos and videos used in common, including pictures of Minor Victim and the accounts' profile pictures. These records also provided evidence that there are numerous other probable minor victims beyond Minor Victim. Further, at least two Internet Protocol (IP) addresses were utilized by both accounts on multiple logins: 197.211.58.14 and 129.205.124.230.

22. On July 29, 2023, U.S. investigators traveled to Lagos, Nigeria in furtherance of the investigation into the sextortion of Minor Victim. While there, pursuant to Nigerian law, the Nigerian Economic and Financial Crimes Commission (EFCC) and other Nigerian authorities identified, located, apprehended, and interviewed LAWAL. A search effected upon LAWAL's arrest pursuant to Nigerian law yielded three cellular devices:

    i.    PHONE 1 - Xiaomi Redmi M2006C3LG, IMEI -3731 call number -1415;

    ii.    PHONE 2 - iPhone X, call number -9822; and

    iii.    PHONE 3 - iPhone 11, white in color, black case, call number -2483.

22. On August 4, 2023, EFCC agents interviewed LAWAL at their office in Lagos, Nigeria. I received a copy of the written statement narrated by LAWAL to a transcribing officer. I was further informed that a video recording of the interview was made. At the beginning of the

9

interview, interviewing officers informed LAWAL he was not obliged to say anything he did not wish to say, and LAWAL freely elected to speak with authorities. After consenting to speak with the EFCC, LAWAL advised that he owned the phone associated with the Nigerian phone number -2483, which is the verified registration phone number associated with the Bellajannet28 and Bellajannet30 Instagram accounts. LAWAL further stated he owned the Instagram Account Bellajannet30, and other accounts identified with variations of the "BELLA" Account name. He disclosed that he created the Bellajannet30 account sometime in December 2022.

23. LAWAL stated that he participates in blackmail, which he began doing in December 2022. He said that he collected nude female photographs from the internet and used them to present himself on Instagram as a young girl named "Bella" from Michigan State University. He would then contact boys, who he referred to as "clients," from other countries and get their nude photographs and information about them, and then post it back to them hoping they will comply by sending money. He estimates that he has done this 30 to 40 times.

24. In this case, LAWAL arranged the images of Minor Victim into a "photogrid" and threatened to post the nude images to Minor Victim's family and school if he did not receive money. He claimed he received $25.00 from Minor Victim, but asked for more money, which was not sent. Later, LAWAL saw an obituary for the boy and knew that he had died. At this point, LAWAL then started checking on Minor Victim's contacts and people close to Minor Victim, hoping to collect money from them as well. While continuing to pose as a young girl, LAWAL told Minor Victim's family members that he was close to Minor Victim, and that he was now being blackmailed as well and needed to pay the blackmailers money.

10

25. On August 7, 2023, LAWAL met with his attorney and was advised of his rights to remain silent. LAWAL agree to speak with FBI investigators with his attorney present. LAWAL stated that he engages in blackmail and extortion over the internet, but contradicted his previous interview statement by claiming to have no recollection of Minor Victim or his death. LAWAL claimed he opened an account on Instagram and sold the account to a vendor for 50,000 Naira and did not change the fact that his personal phone number was associated with it. LAWAL claimed he created the Bellajannet28 account, possessed it for a week in August and then sold it, but he does not recall creating the Bellajannet30 Account. He could not explain how the account created in August was used to communicate with Minor Victim in July 2022. LAWAL could not identify the person to whom he sold the Bellajannet28 account, but claimed it was an online vendor. LAWAL could not explain why the registration telephone numbers were the same for both the Bellajannet28 and Bellajannet30 accounts.

26. LAWAL admitted he used the Bellajannet28 account to pose as a female during the one-week period in August 2022, and used it to meet "clients" to "date." He looks for clients on certain pages on Instagram by looking for "post likes." He sought out men to chat with, particularly those who appeared to have money. LAWAL talked to them like they were in a relationship, and sent nude photographs, and received nude photographs from clients. He got his female photographs from websites of porn stars that were not well-known. An FBI Agent showed LAWAL a photograph of a blonde female in a red hoodie sweatshirt and underwear that was identical to the one used to communicate with the Minor Victim but had the text "Hi Richard" written across it, and LAWAL admitted that was one of the model photographs that he frequently used. LAWAL said he would receive $100-$240 from his clients. Depending on the relationship, he would usually request different amounts through

11

electronic transfers, gift cards, or crypto. He stated that he only had two clients who paid him during the period of December or January. He had tried to chat with 20 to 30 clients overall but did not receive payment. He has also attempted blackmail schemes four to five times but did not successfully collect payment from those targets. In the blackmail attempts, LAWAL received nudes from clients, and told them to pay him or he would send out the nude photographs.

27.   On or about August 7, 2023, one of LAWAL's devices, a Xiaomi Redmi M2006C3LG, IMEI 4535903731, was forensically examined after LAWAL consented to its search and signed a consent form for that purpose. When FBI personnel opened the phone to begin forensic examination, the UID 4535903731 Instagram Account was open and logged in to an account bearing the Account Name "Bellajanne25" and using the same profile picture as the other Bellajannet accounts. This would indicate that LAWAL was the user and may have used and had access to the account previously identified as Bellajannet30, which was used to extort and blackmail Minor Victim's family. The profile picture used in common by all three accounts (Bellajannet28, Bellajannet30, Bellajanne25) was of a young college-aged girl playing volleyball.

## IDENTIFICATION AND LOCATION INFORMATION

28.   Hassanbunhussein Abolore LAWAL, also known as "Bella Jannet," "BellaJanne25," "BellaJannet28," "BellaJannet30," "Alice Conner," "Aliceconnor566," "Hassan Lawal," and "Lawal Hassan," (LAWAL) is a citizen of Nigeria, born on August 28, 2000, in Nigeria. LAWAL is believed to have resided on Ife-Ibadan Road, off Oni Street, in Ife, Osun State, Nigeria, and to have held Nigerian Bank Verification Number 22544270143. LAWAL is currently in the custody of Nigerian officials in Lagos, Nigeria.

12

29. Attached to this affidavit as **Attachment 1** is an image of LAWAL. The photograph of LAWAL is made part of this extradition request. This photograph has been identified as LAWAL by Special Agent Karen Ryndak.

30. In response to a request from the FBI, the EFCC provided the photograph along with additional identifying information for LAWAL, to include his date of birth (August 28, 2000), associated bank enrollment institution Guaranty Trust Bank, as well as a telephone number of -2483. This photograph was identified by FBI Agent Ryndak, who interviewed LAWAL in Lagos, Nigeria, on August 7, 2023, and who knows LAWAL to be the person arrested by the EFCC who admitted to several of the offenses in an interview with EFCC officers.

ROBERT M HAMILTON, TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION

SWORN AND SUBSCRIBED BEFORE ME
THIS _18__ DAY OF _September_, 2023.

HON. SHIVA V. HODGES
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF SOUTH CAROLINA

# ATTACHMENT 1

## ATTACHMENT 1

### Photograph of HASSANBUNHUSSEIN ABOLORE LAWAL

